IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Thomas M.,[1]                    )        C/A No.: 1:21-1473-SVH
                                 )
              Plaintiff,         )
                                 )
    vs.                          )
                                 )              ORDER
Kilolo Kijakazi,[2] Acting       )
Commissioner of Social Security  )
Administration,                  )
                                 )
              Defendant.         )
_____  )

This appeal from a denial of social security benefits is before the court
for a final order pursuant to 28 U.S.C. § 636(c), Local Civ. Rule 73.01(B)
(D.S.C.), and the order of the Honorable Timothy M. Cain, United States
District Judge, dated May 24, 2021, referring this matter for disposition.
[ECF No. 10]. The parties consented to the undersigned United States
Magistrate Judge's disposition of this case, with any appeal directly to the
Fourth Circuit Court of Appeals. [ECF No. 9].

Plaintiff files this appeal pursuant to 42 U.S.C. § 405(g) of the Social
Security Act ("the Act") to obtain judicial review of the final decision of the

---

[1] The Committee on Court Administration and Case Management of the
Judicial Conference of the United States has recommended that, due to
significant privacy concerns in social security cases, federal courts should
refer to claimants only by their first names and last initials.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July
9, 2021. Pursuant to Fed. R. Civ. P. 25(d), she is substituted for former
Commissioner Andrew Saul as the defendant in this action.

Commissioner of Social Security ("Commissioner") denying the claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the court reverses and remands the Commissioner's decision for further proceedings as set forth herein.

I.    Relevant Background

A.    Procedural History

On January 14, 2018, Plaintiff protectively filed applications for DIB and SSI in which he alleged his disability began on April 1, 2017. Tr. at 87, 88, 192–95, 196–207. His applications were denied initially and upon reconsideration. Tr. at 100–03, 105–08, 114–17. On November 23, 2020, Plaintiff had a hearing by telephone before Administrative Law Judge ("ALJ") Arthur L. Conover. Tr. at 30–65 (Hr'g Tr.). The ALJ issued an unfavorable decision on December 28, 2020, finding Plaintiff was not disabled within the meaning of the Act. Tr. at 12–29. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–6. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on May 18, 2021. [ECF No. 1].

B.    Plaintiff's Background and Medical History

1.    Background

Plaintiff was 49 years old at the time of the hearing. Tr. at 36. He attended school through the eleventh grade and completed the general educational development ("GED") tests, obtaining a high school equivalency certificate. Tr. at 36. His past relevant work ("PRW") was as a furniture mover, a maintenance worker, a dishwasher, a chef, and a general laborer. Tr. at 54. He alleges he was unable to work from February 1, 2017, until May 1, 2019, and beginning again on February 1, 2020.[3] Tr. at 42–43.

2.    Medical History

On October 28, 2016, x-rays of Plaintiff's lumbar spine showed loss of disc height, endplate sclerosis, and vacuum disc at L5–S1 and facet arthropathy at L4–5 that was greater on the left than the right. Tr. at 336.

Plaintiff presented to the emergency room ("ER") at Baptist Hospital with a complaint of pain to his left third finger on March 27, 2017. Tr. at 338. He indicated he had injured the finger when he fell over the handlebars on his bicycle and landed on his left hand. *Id.* X-rays of Plaintiff's left hand

---

[3] Plaintiff admits he worked from May 2019 until February 2020. Tr. at 43. His earnings record reflects wages paid by "MIYOS ON FOREST LLC" of $1,177 during first quarter 2019, $4,323 during fourth quarter 2018, and $2,326 during third quarter 2018. Tr. at 216. It indicates wages paid by "BOONNOW LLC" of $4,103 in second quarter 2019 and $1,564 in first quarter 2019. *Id.* This evidence suggests Plaintiff returned to work in the third quarter of 2018.

showed mild soft tissue swelling about the proximal interphalangeal ("PIP") joint of the third finger, but no fracture or opaque foreign body. *Id.* Michael R. Daum, M.D., noted minimal swelling at the PIP joint of the left third finger and pain to the PIP joint, but no obvious dislocation. Tr. at 338. He placed Plaintiff in a finger splint and discharged him with six Norco tablets. Tr. at 339.

Plaintiff presented to the ER at Lexington Medical Center ("LMC") on November 21, 2017. Tr. at 350. He reported headaches and back pain due to a car accident five days prior. *Id.* He described pain in his mid-abdomen and lumbar spine. *Id.* A computed tomography ("CT") scan of Plaintiff's abdomen and pelvis showed a small area of contusion/laceration in the left hepatic lobe and a probable tiny amount of free fluid in the pelvis. Tr. at 352. A CT scan of Plaintiff's head was normal. *Id.* Robert Dale Kosciusko, M.D., recorded normal findings on physical exam. *Id.* He noted Plaintiff had no red flags to suggest a more serious condition and discharged him. Tr. at 350. He instructed Plaintiff to follow up at Lexington Medical Associates. *Id.*

Plaintiff presented to Conigliaro Jones, M.D. ("Dr. Jones"), for a consultative medical evaluation on May 29, 2018. Tr. at 345–47. He alleged a musculoskeletal disorder, chronic back pain, chest pain, blurred vision, swelling of his feet, and shoulder pain and indicated he had no primary care provider because he could not afford healthcare. Tr. at 345. He described

4

flare-ups of pain and weakness in his back, legs, and shoulders that occurred intermittently. *Id.* He denied having worked "over the past couple of weeks." Tr. at 346. Dr. Jones observed Plaintiff to be alert, fully oriented, in no acute distress, have appropriate thought content, answer questions appropriately, demonstrate intact memory, recall three of three objects after a five-minute delay, and show appropriate affect. *Id.* She assessed Plaintiff's visual acuity as 20/40 in the left eye, 20/100 in the right eye, and 20/40 in both eyes, without use of glasses or corrective lenses. *Id.* She noted: full range of motion ("ROM") of Plaintiff's extremities; abilities to squat, stoop, bend, heel-toe walk, and tandem walk; good fine finger dexterity; negative straight-leg raise ("SLR") bilaterally; no required use of an assistive device to rise or ambulate; 5/5 bilateral grip strength; +2 reflexes in the upper and lower extremities; and normal cranial nerve findings. Tr. at 346–47. She assessed musculoskeletal disorder, not otherwise specified, history of chronic lower back pain, tobacco abuse, and poor visual acuity. Tr. at 347. She felt that Plaintiff would likely benefit from vocational rehabilitation. *Id.*

On June 25, 2018, state agency medical consultant Erle Sittambalam, M.D. ("Dr. Sittambalam"), reviewed the record and assessed Plaintiff's physical residual functional capacity ("RFC") as follows: occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk for a total of about six hours in an eight-hour workday; sit for a total of

about six hours in an eight-hour workday; and frequently balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, or scaffolds. Tr. at 71–73, 81–83. A second state agency medical consultant, Ronald Collins, M.D. ("Dr. Collins"), assessed the same physical RFC as Dr. Sittambalam on June 17, 2020. *Compare* Tr. at 71–73 and 81–83, *with* Tr. at 94–96.

Plaintiff presented to the ER at LMC on July 7, 2018. Tr. at 367. He complained of a one-year history of low back pain with increasing severity over the prior two days. *Id.* He described the pain as moderate, achy, and radiating to his left thigh, knee, hip, and foot. *Id.* Maxcy H. Nowell, M.D. ("Dr. Nowell"), observed tenderness to the left lower lumbar spine and a lateral left bony protuberance that was tender to palpation and asymmetrical to the other side, but normal musculoskeletal ROM, no edema or deformity, negative Romberg sign, no sensory deficit, and normal strength, reflexes, and muscle tone. Tr. at 369. X-rays showed degenerative disc space narrowing and facet arthrosis at L5–S1. Tr. at 369, 372. Dr. Nowell prescribed Prednisone 10 mg, Norco 5-325 mg, and Flexeril 10 mg. Tr. at 370. He discharged Plaintiff with instruction to follow up with Joseph Russell Williams, M.D. *Id.*

On July 14, 2020, Plaintiff complained of low back pain so intense that it had prevented him from working over the prior six months. Tr. at 389. He endorsed occasional numbness in his left foot and intermittent weakness in

his left foot and ankle, but denied persistent numbness and weakness in his lower extremities. *Id.* He reported some pain relief with Hydrocodone. *Id.* Tom Armsey, M.D. ("Dr. Armsey"), noted normal findings, aside from paraspinal muscle tenderness, tenderness to the left posterior superior iliac spine ("PSIS") and sacroiliac joint, lumbar forward flexion to 80 degrees and extension to 20 degrees, and weakness of the left extensor hallucis longus ("EHL"). *Id.* He assessed sacroiliitis and ordered x-rays and magnetic resonance imaging ("MRI") of the lumbar spine. *Id.* He refilled Norco 5-325 mg. *Id.*

On July 24, 2020, Plaintiff continued to complain of low back pain with left lower extremity radiculopathy. Tr. at 386. He reported using a cane and being unable to stand for long periods or ambulate more than 300 to 400 feet without resting. *Id.* Dr. Armsey observed the following on examination of the lumbar spine: no erythema, ecchymosis, or soft tissue swelling; left greater than right paraspinal muscle tenderness; tenderness to the left PSIS; tenderness to the left sacroiliac joint; forward flexion to 80 degrees; extension to 20 degrees; appropriate balance on one leg standing; weakness of the left EHL; full and equal deep tendon reflexes in the bilateral lower extremities; negative Faber test; negative Trendelenburg test; negative SLR; non-antalgic gait; and well-preserved internal and external rotation and full strength of the bilateral hips. Tr. at 387. He noted an MRI of the lumbar spine showed

lumbar spondylosis from L3 through S1 with disc bulging and facet arthropathy at L3–4 and L4–5, without significant central or foraminal stenosis; grade 1 retrolisthesis of L5 on S1, along with some herniated disc material contacting the bilateral descending S1 nerve roots; and severe right-sided and moderate-to-severe left-sided foraminal stenosis. *Id.* He assessed left-sided sciatica and prescribed Norco 7.5-325 mg and Prednisone 50 mg. *Id.* He advised Plaintiff of options that included medications, therapy, epidural injections, surgical evaluation, and a combination of those options. *Id.* Plaintiff indicated a desire to "think about it," and said he would call when he decided how to proceed. *Id.*

     C.     The Administrative Proceedings

          1.     The Administrative Hearing

               a.     Plaintiff's Testimony

During the hearing on November 23, 2020, Plaintiff admitted he had not received a lot of treatment due to his financial situation. Tr. at 34. He confirmed that his doctor had given him options to take medication, receive injections, or undergo surgery. Tr. at 35. He stated he was inclined to pursue injections, but could not afford them. *Id.* He indicated he had problems with his back, feet, and bilateral shoulders. *Id.* He denied having received treatment for mental impairments. Tr. at 36.

Plaintiff testified he lived in a house with his fiancée, who worked as a housekeeper in a hotel. Tr. at 37–38. He denied having served in the military. Tr. at 38. He stated he was receiving partial food stamp benefits. *Id.* He indicated he was right-handed. *Id.* He denied having a driver's license and said he last drove five to six years prior, as his license had been suspended. Tr. at 38–39.

Plaintiff stated he had worked in 2007 as a general laborer. Tr. at 39–40. He said he had worked in maintenance from 2011 to 2014. Tr. at 40. He indicated he also worked as a mover. *Id.* He said he had worked as a dishwasher at Miyo's. Tr. at 41. He stated he subsequently worked at Chai Thai as a dishwasher for six months and a chef for four to five months. Tr. at 41, 53–54.

Plaintiff confirmed that he worked at Chai Thai from May 2019 to February 2020. Tr. at 43. He stated his "condition" prevented him from working from May 2017 until May 2019. *Id.* The ALJ asked Plaintiff if his condition "got better" to allow him to return to work from May 2019 to February 2020. Tr. at 44. Plaintiff stated he reached a point where he "had to work" to provide for himself. *Id.* He said he "dealt with the pain" as he worked. *Id.* He indicated he was unaware of all his problems with "uneven pelvis, and bulging discs, and [his] shoulder." *Id.* He explained that he had

not attempted to return to the Thai restaurant because "due to the Corona, they're closed down." Tr. at 45.

Plaintiff testified he spent most of the day at home. *Id.* He stated pain in the left side of his back and shoulder caused him difficulty falling asleep and often woke him during the night. *Id.* He said he could sit for "[a]bout 10 minutes maybe" before having to move around or get up. Tr. at 46. He indicated he could stand for five to 10 minutes at a time. *Id.* He estimated he could stand for a maximum of 10 to 15 minutes. *Id.* He said he used a cane all the time. *Id.*

Plaintiff denied cooking meals, performing housework, and doing laundry. *Id.* He said he was depressed because he could not return to work. Tr. at 47. He indicated he sometimes cried for 30 minutes at a time because he could not help his fiancée. *Id.* He said he might cry "twice a day, three times a week." *Id.* He stated he had a recurring knot on the left side of his back. *Id.* He noted he often had to switch positions while lying down. *Id.*

Plaintiff testified he accompanied his fiancée on shopping trips. *Id.* He said he watched television and movies and played video games. *Id.* He indicated his fiancée paid for his pain medications. Tr. at 49.

Plaintiff stated he experienced pain on the left side of his back. Tr. at 50. He said he sometimes had swelling in his feet. *Id.* He indicated he had informed Dr. Armsey about the problems with his shoulders and Dr. Armsey

had prescribed Tramadol and pain medication. Tr. at 51. He indicated he was using a cane during the period from February 2017 to May 2019. *Id.* He said he used a cane when he was "in pain" while working in the Thai restaurant, but denied having used a cane while he served as a dishwasher. Tr. at 52. He stated he had experienced "quite a few falls" when his back and left leg gave out. Tr. at 52–53.

b.    Vocational Expert Testimony

Vocational Expert ("VE") Dion Porter, Ph.D., reviewed the record and testified at the hearing. Tr. at 54–59. The VE categorized Plaintiff's PRW as a furniture mover, *Dictionary of Occupational Titles* ("*DOT*") No. 920.587-018, requiring medium exertion and a specific vocational preparation ("SVP") of 2; a maintenance worker, *DOT* No. 382.664-010, requiring medium exertion and an SVP of 3; a dishwasher, *DOT* No. 827.584-010, requiring heavy exertion and an SVP of 3; a chef, *DOT* No. 313.131-014, requiring light exertion and an SVP of 7; and a general laborer, *DOT* No. 732.687-030, requiring medium exertion and an SVP of 2. Tr. at 54. The ALJ described a hypothetical individual of Plaintiff's vocational profile who could perform lifting at the light exertional level; could not kneel, crawl, or climb ladders, ropes, or scaffolds; could occasionally push and pull with the lower extremities, balance, stoop, crouch, and climb ramps and stairs; and could frequently perform bilateral overhead reaching. Tr. at 55. The VE testified the

hypothetical individual could perform Plaintiff's PRW as a chef. *Id.* The ALJ asked whether there were any other jobs in the economy that the hypothetical person could perform. Tr. at 56. The VE identified light jobs with an SVP of 2 as an inspector, *DOT* No. 727.687-062, a laundry worker, *DOT* No. 302.685-010, and a table busser, *DOT* No. 311.677-018, with 117,000, 303,000, and 216,000 positions in the national economy, respectively. *Id.* The VE stated he had reduced the numbers of representative jobs to account for the restrictions in the hypothetical question. Tr. at 57. The ALJ asked the VE if his testimony was consistent with the information in the *DOT* and its companion publications. *Id.* The VE stated it was, except that his opinion as to overhead work was based on his work as a rehabilitation counselor, as the function was not specifically addressed in the *DOT*. *Id.* The ALJ asked the VE if work as a chef would be ruled out if the individual were limited to simple, unskilled, repetitive work. *Id.* The VE confirmed that it would be. *Id.*

The ALJ asked the VE whether the individual would be able to perform the jobs he identified if the individual had to use a cane to ambulate, but not to stand. Tr. at 57–58. The VE testified the individual would be unable to perform Plaintiff's PRW as a chef or the jobs as a table busser and laundry worker, but could still perform work as an inspector. *Id.*

Plaintiff's counsel asked the VE to consider that the individual would need to change positions from sitting to standing every five to 10 minutes. Tr. at 58. He asked if the restriction would eliminate work as an inspector. *Id.* The VE testified it would eliminate the job, as it would render the individual off-task. Tr. at 59.

c.    Witness Testimony

Plaintiff's fiancée, Lawanda Boyd, testified during the hearing. Tr. at 59–63. She confirmed that she lived with Plaintiff and observed his condition on a regular basis. Tr. at 60. She indicated she handled the cooking, housework, and laundry, as Plaintiff was unable to perform those tasks. *Id.* She stated Plaintiff was very restless and had difficulty sleeping at night. *Id.* She said Plaintiff had crying spells two or three days per week. Tr. at 61. She stated Plaintiff had to stop and rest after walking for a period. *Id.* She indicated she often shopped by herself because of Plaintiff's difficulties. *Id.* She confirmed that Plaintiff took pain medication several times a day and did not drive. *Id.* She said she sometimes gave Plaintiff his medications. Tr. at 62. She stated Plaintiff had been using a cane for two years. Tr. at 63. She confirmed that Plaintiff took naps during the day. *Id.*

2.    The ALJ's Findings

In his decision dated December 28, 2020, the ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through March 31, 2023.

2.    From February 1, 2017 through May 1, 2019, the claimant did not engage in substantial gainful activity (20 CFR 404.1520(b) and 404.1571 et seq.). After completing the above closed period, the claimant performed substantial gainful activity in May 2019, and continued to engage in substantial gainful activity through January 2020 (20 CFR 404.1571 *et seq.*) The claimant has not engaged in substantial gainful activity since February 1, 2020 (20 CFR 404.1571 *et seq.*).

3.    The claimant has the following severe impairments: degenerative disc disease and degenerative joint disease (20 CFR 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except never climb ladders, ropes, or scaffolds; never kneel or crawl; occasionally climb ramps or stairs; occasionally balance, stoop, or crouch; occasionally push or pull with the legs, bilaterally; and frequent overhead reaching, bilaterally.

6.    The claimant is capable of performing past relevant work as a Chef (DOT Code: 313.131-014), skilled (SVP 7), light exertional level. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.    The claimant has not been under a disability, as defined in the Social Security Act, from February 1, 2017, through the date of this decision (20 CFR 404.1520(f)).

Tr. at 17–24.

II.    Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)    the ALJ failed to explain his assessment of Plaintiff's RFC in accordance with SSR 96-8p; and

2)      the ALJ erred in evaluating Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A.      Legal Framework

1.      The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that

impairment meets or equals an impairment included in the Listings;[4] (4) whether such impairment prevents claimant from performing PRW;[5] and (5) whether the impairment prevents him from doing substantial gainful employment. *See* 20 C.F.R. §§ 404.1520, 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

---

[4] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. §§ 404.1525, 416.925. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or are "at least equal in severity and duration to [those] criteria." 20 C.F.R. §§ 404.1526, 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[5] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. §§ 404.1520(h), 416.920(h).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, §§ 404.1520(a), (b), 416.920(a), (b); Social Security Ruling ("SSR") 82-62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146. n.5 (1987) (regarding burdens of proof).

2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a

17

party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should

the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.    Analysis

1.    RFC Assessment

Plaintiff argues the ALJ failed to perform a proper function-by-function analysis as required pursuant to SSR 96-8p. [ECF No. 18 at 9–11]. He maintains the ALJ did not adequately address his allegations of severe difficulty sitting in a normal position, limited ability to sit or stand for more than a short period, and a need for a cane to ambulate, which are supported by the objective evidence. *Id.* at 12–15. He contends the ALJ erred in considering his visual impairments to be non-severe and in declining to include visual restrictions in the RFC assessment. *Id.* at 15.

The Commissioner argues the medical evidence established Plaintiff was not disabled under the provisions of the Act. [ECF No. 20 at 4–5]. She maintains the ALJ appropriately considered Plaintiff's poor visual acuity and found the record supported no resulting functional limitations, as Plaintiff was able to work despite the impairment. *Id.* at 5–7. She further contends any error was harmless because the ALJ proceeded beyond step two and cited the job of table busser, which did not require near visual acuity, in his alternate step-five finding. *Id.* at 7. She claims the ALJ complied with SSR 96-8p and provided a narrative discussion to support an RFC assessment

that was supported by substantial evidence. *Id.* at 8–13. She maintains the record did not support additional restrictions in the RFC assessment. *Id.*

The claimant's RFC represents the most he can still do, despite limitations imposed by his impairments and symptoms. 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ should consider all the claimant's medically determinable impairments, including those that are non-severe, in assessing the RFC. 20 C.F.R. §§ 404.1545(b), 416.945(b). While a non-severe impairment might be insufficient to impose functional limitations on its own, it may do so when considered in combination with another impairment. SSR 96-8p, 1996 WL 374184, at *5.

An ALJ errs by expressing the RFC assessment prior to conducting a function-by-function analysis. *Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019) (citing *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). The ALJ must engage in a function-by-function assessment of the claimant's physical, mental, sensory, and other work-related abilities. SSR 96-8p, 1996 WL 374184, at *1. If he expresses a claimant's RFC without having engaged in a function-by-function analysis, there is a reasonable probability that he might "overlook limitations and restrictions that would narrow the ranges and types of work an individual may be able to do." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). Although remand is not required in every case in which an ALJ fails to engage in a function-by-function analysis, an ALJ's

failure to engage in a function-by-function analysis may require remand where a claimant asserts a functional limitation, and the adjudicator declines to address it. *See Dowling v. Commissioner of Social Security Administration*, 986 F.3d 377, 389 (4th Cir. 2021) (noting the court's reluctance to announce in *Mascio* a rule requiring remand in all cases in which ALJ's failed to engage in function-by-function analysis was intended to prevent ALJs from having to "discuss functions that [were] irrelevant or uncontested," but did not absolve them of the duty to address contested functions) (citing *Mascio*, 780 F.3d at 636).

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (citing *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984). The ALJ must include a narrative discussion explaining the restrictions included in the RFC assessment and referencing specific medical facts, such as medical signs and laboratory evidence, and non-medical evidence, including daily activities and observations. SSR 96-8p, 1996 WL 374184, at *7. He "must explain how any material inconsistencies or ambiguities in the case record were considered and resolved." *Id.*

The ALJ addressed Plaintiff's visual impairment at step two as follows:

During a May 2018 consultative examination, the claimant's visual acuity was assessed. His vision was 20/40 in the left eye, 20/100 with his right eye, and 20/40 with using both eyes without any glasses or corrective lenses (See Exhibit 3F, page 3). The

resulting assessment was poor visual acuity (Exhibit 3F, page 4). I considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.

Tr. at 18–19.

He subsequently assessed Plaintiff as having the RFC "to perform light work as defined in 20 CFR 404.1567(b)" that required he never kneel, crawl, or climb ladders, ropes, or scaffolds; occasionally balance, stoop, crouch, and climb ramps or stairs; and frequently engage in bilateral overhead reaching. Tr. at 20. Notably, the ALJ did not include any visual restrictions in the RFC assessment.

Plaintiff persuasively argues the ALJ failed to conduct a function-by-function assessment in assessing an RFC. Nowhere in the ALJ's decision does he explain how the evidence supports the specific restrictions he imposed. *See generally* Tr. at 20–23. Plaintiff testified he could sit for 10 minutes at a time, stand for five to 15 minutes at a time, and must use a cane all the time. Tr. at 46. He informed Dr. Armsey that he used a cane, was unable to stand for long periods, and could not ambulate more than 300 to 400 feet without resting. Tr. at 386. He reported blurred vision to Dr. Jones, Tr. at 345, and Dr. Jones assessed poor visual acuity, Tr. at 347. Thus, the record contains allegations as to functional limitations the ALJ declined to address.

The ALJ was not required to accept Plaintiff's allegations or impose specific restrictions to address them, but he was also not free to disregard the

alleged functional limitations without explanation. The narrative discussion provision in SSR 96-8p required he either: (1) provide reasons, supported by the evidence, for declining to include provisions in the RFC assessment to address Plaintiff's allegations as to reduced abilities to sit and stand, ambulate without use of a cane, and engage in certain visual tasks; or (2) explain how the RFC he assessed accommodated the alleged functional limitations to the extent they were supported by the record. Because he did neither, his RFC assessment does not rest upon application of the proper legal standards.

### 2.     Plaintiff's Statements as to Symptoms

Plaintiff argues the ALJ erred in evaluating his statements as to the intensity, persistence, and limiting effects of his symptoms. [ECF No. 18 at 16–18]. He maintains the ALJ noted the inadequacy of his treatment without considering his allegations that he could not afford treatment. *Id.* at 18.

The Commissioner argues the ALJ adequately explained that Plaintiff's descriptions of his symptoms and limitations throughout the record were generally inconsistent and unpersuasive and that he failed to undergo the treatment that would be expected of an individual with the limitations he alleged. [ECF No. 20 at 15]. She maintains the ALJ acknowledged Plaintiff's inability to pay for the epidural steroid injection Dr. Armsey prescribed. *Id.* (citing Tr. at 22). She contends Plaintiff could have availed himself of free or

low-cost medical resources in the community, but presented no evidence that he attempted to do so. *Id.* at 15–17.

In determining whether a claimant is disabled, an ALJ must evaluate the claimant's statements regarding the intensity, persistence, and limiting effects of his symptoms based on the rules in 20 C.F.R. § 404.1529 and § 416.929 and SSR 16-3p. "[A]n ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms." *Lewis v. Berryhill*, 858 F.3d 858, 865–66 (4th Cir. 2017) (citing 20 C.F.R. § 404.1529(b), (c)); *see also* 20 C.F.R. § 416.929(b), (c). "First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms." *Id.* at 866 (citing 20 C.F.R. § 404.1529(b)); *see also* 20 C.F.R. § 416.929(b). If the ALJ concludes the impairment could reasonably produce the symptoms the claimant alleges, he is to proceed to the second step, which requires him to "evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities." *Id.* (citing 20 C.F.R. § 404.1529(c)); *see also* 20 C.F.R. § 416.929(c).

The second determination requires the ALJ to consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence,

including [the claimant's] history, the signs and laboratory findings, and statements by [the claimant's] medical sources or other persons about how [his] symptoms affect [him]." 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Evidence relevant to this inquiry includes: (1) the claimant's activities of daily living; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures the claimant uses or has used to relieve pain or other symptoms (e.g., lying flat on his back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Although the treatment the claimant has received is relevant to an evaluation of his statements as to the intensity, persistence, and limiting effect of his pain or other symptoms, a "claimant may not be penalized for failing to seek treatment she cannot afford; 'it flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.'" *Lovejoy v. Heckler*,

790 F.2d 1114, 1117 (4th Cir. 1985) (quoting *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984)).

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but his "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Tr. at 21. He explained:

> The description of the symptoms and limitations which the claimant has provided throughout the record has generally been inconsistent and unpersuasive. Additionally, the claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. The record reveals relatively infrequent trips to the doctor or no actual treatment for the allegedly disabling symptoms.

*Id.*

The ALJ failed to engage in the inquiry required to uphold his finding. Pursuant to SSR 16-3p: "We will not find an individual's symptoms inconsistent with the evidence in the record on [the basis that the frequency or extent of the treatment sought is not comparable with the degree of the subjective complaints] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." 2017 WL 5180304, at *9. The ALJ acknowledged the following in the decision: "An epidural steroid injection was ordered for the claimant in August 2020. However, the claimant did not have insurance

coverage and could not pay for the injection (See Exhibit 5F)." Tr. at 22. Despite this acknowledgment, he did not reconcile his finding of inconsistency based on his failure to receive "the type of medical treatment one would expect for a totally disabled individual," "relatively infrequent trips to the doctor," and "no actual treatment for the allegedly disabling symptoms" with Plaintiff's allegations of inability to afford treatment. *See* Tr. at 21.

The SSR further provides: "We may need to contact the individual regarding the lack of treatment or at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints." SSR 16-3p, 2017 WL 5180304, at *9. Thus, if the frequency or extent of treatment is out of line with the claimant's complaints, the ALJ should question the claimant as to the perceived inconsistency during the hearing. An ALJ should specifically consider that "[a]n individual may not be able to afford treatment and may not have access to free or low-cost medical services." *Id.* at *10. Although the hearing transcript reflects the ALJ's recognition that Plaintiff had received little treatment, Tr. at 34 and 53, and Plaintiff's allegations that he could not afford additional treatment, Tr. at 34–35 and 51, the ALJ did not question Plaintiff as to the efforts he had undertaken to obtain free or low-cost treatment or attempt to elicit any

other testimony as to the reasons his treatment was allegedly out-of-line with his complaints. *See generally* Tr. at 33–54.

Citing SSR 18-3p, the Commissioner maintains the ALJ did not err in considering Plaintiff's lack of treatment without engaging in the proper inquiry because Plaintiff bears the burden to show that he attempted to avail himself of free or low-cost medical services. [ECF No. 20 at 16]. The Commissioner's argument is consistent with the following language in the SSR: "In adult claims, the individual has the burden to provide evidence showing that he or she has good cause for failing to follow prescribed treatment." SSR 18-3p, 2018 WL 4945641, at *4. However, SSR 18-3p only permits the ALJ to determine whether an individual impermissibly failed to follow prescribed treatment where he finds: (1) "[t]he individual would otherwise be entitled to benefits based on disability or eligible for blindness benefits"; (2) the "individual's own medical source(s) prescribed treatment for the medically determinable impairment(s) upon which the disability finding is based"; and (3) "the individual did not follow the prescribed treatment." SSR 18-3p, 2018 WL 4945641, at *2. The ALJ did not make any of the three requisite findings pursuant to SSR 18-3p. The SSR further provides: "We will not determine whether an individual failed to follow prescribed treatment if we find the individual is not disabled, not blind, or otherwise not entitled to or eligible for benefits under titles II or XVI of the Act." SSR 18-3p, 2018 WL

4945641, at *3. Therefore, the conditions in the SSR are inapplicable in this case.

The ALJ cited evidence in addition to Plaintiff's lack of treatment. He noted the record prior to Plaintiff's alleged disability onset date consisted of x-rays of his lower spine showing disc disease at L5–S1 and facet arthropathy at L4–5. *Id.* He indicated there were only two records over the requested closed period of disability from February 1, 2019, through May 1, 2019, Dr. Jones's consultative exam reflecting no abnormal findings and a July 2018 ER visit to LMC, which included x-rays showing degenerative disc space narrowing and facet arthrosis at L5–S1 and observations of tenderness to palpation. Tr. at 21–22. He pointed out that after Plaintiff again stopped working in February 2020, he only sought treatment from one provider in July 2020. Tr. at 22.

Although the ALJ relied on a lack of treatment in combination with relatively minor observations on exam, he placed significant emphasis on Plaintiff's infrequent treatment. An ALJ may err in considering noncompliance with prescribed treatment as one of several factors contrary to the claimant's statements. *See Lovejoy*, 790 F.2d at 1117. In *Lovejoy*, the court wrote:

> We recognize that the Secretary did not deny benefits on the basis of noncompliance with prescribed treatment; however, it is erroneous to consider the claimant's failure to seek treatment as a factor in the determination that her impairment is not as

severe as it would be to reach the ultimate conclusion that the claimant is not disabled because she failed to follow prescribed treatment when that failure is justified by lack of funds.

*Id.* (citing *Preston v. Heckler*, 769 F.2d 988 (4th Cir. 1995)).

In the absence of further inquiry as to Plaintiff's efforts to obtain treatment, the ALJ's discounting of his allegations as to the frequency, intensity, and limiting effects of his symptoms does not rest upon application of the proper legal standards.

III.    Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence. Therefore, the undersigned reverses and remands this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

January 3, 2022
Columbia, South Carolina

Shiva V. Hodges
United States Magistrate Judge